STATE, EX REL. MOUNT PLEASANT CEMETERY COMPANY, v. PATERSON, NEWARK AND NEW YORK RAILROAD COMPANY, AND NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY.

1. Though a writ of *mandamus* will lie at the instance of a private individual against a corporation, to compel performance of a duty enjoined by its charter, to be executed for the benefit of the relator, or the class of individuals to whom he belongs, the allowance of the writ in such cases must be controlled by the fundamental principle that it is the absence of an adequate legal remedy that gives the court jurisdiction to proceed by *mandamus*. Two things must concur—a specific legal right, and the absence of an effectual legal remedy.

2. The charter of the Paterson and Newark Railroad Company authorized the company to construct its railroad along the Passaic river, from Belleville to Newark, and to acquire the rights of the shore-owners by purchase or condemnation, with a proviso that in passing by the lands of the Mount Pleasant Cemetery, the said railroad should be constructed entirely outside, and to the east, of the present stone wall embankment of the cemetery grounds, and near the line of high water in said Passaic river; and that before entering upon the said lands, the said railroad company should enter into an agreement with the Mount Pleasant Cemetery Company to construct a suitable stone wall, not less than six feet high, on the line between said railroad and the cemetery grounds. The company located its road outside of the line indicated, and, before it commenced the construction thereof, executed and delivered to the cemetery company, a bond in the penal sum of $30,000, conditioned to construct a wall in compliance with the charter, within three years. On application for a *mandamus* to compel the company. to build the wall—*Held*—

1. That it was the legislative purpose to secure to the relator a satisfactory location of the railroad, and an agreement for the erection of a wall—to be enforced in the usual method by which contracts may be enforced, by action at law or by bill for specific performance; and that the specific duty imposed on the company by its charter in this respect had been fully performed.

2. That the relator had adequate legal remedy on the contract, and that, if that remedy had become inefficacious, by reason of delay and the intervening insolvency of the obligor, the relator could have no relief by *mandamus*.

On application for a writ of alternative *mandamus*.

The Mount Pleasant Cemetery Company was chartered in 1844. Said charter and any supplements are regarded as in evidence, (*pro ut* the same.)   *Pamph. L.* 1844, *p.* 19.

The charter and supplements thereto of the Paterson and Newark Railroad Company are also regarded as in evidence, (*pro ut* the same.)   *Pamph. L.* 1864, *p.* 663; 1866, *pp.* 86, 880; 1871, *p.* 979.

The railroad track of said Paterson and Newark Railroad Company was constructed by said company in front of said cemetery grounds, below high-water mark in Passaic river, and there now exists.   Such construction was completed during the years 1866 and 1867.

Prior to such construction, said Paterson and Newark Railroad Company made its bond to the Mount Pleasant Cemetery Company, (*pro ut* the same.)  Said bond is dated August 17th, 1866, and is in the penalty of $30,000.   Its condition recites that, by a supplement to the charter of the railroad company, it was required, before entering on the lands of said cemetery company, to enter into an agreement with said cemetery company to build a suitable stone wall, not less than six feet high, on the line between said railroad and said cemetery grounds; that the railroad company were about to enter upon said lands, and had agreed, and did thereby agree to construct said stone wall within three years; and it then provides that if the said railroad company, or their successors or assigns, should and did well and truly construct, within three years from the date of said bond, a suitable stone wall, not less than six feet high, above the surface of the ground, with a proper foundation laid in cement to the water line, and that part above said line to be laid in good lime and sand mortar, the line of said wall to be designated by said cemetery company, then the obligation was to be void, else to remain in force.

September 8th, 1868, the Paterson and Newark Railroad Company made and delivered a lease of their railroad and franchises to the Erie Railroad Company, which thereafter occupied and operated the same.

In 1870, the said The Paterson and Newark Railroad Com-

State v. Paterson, Newark and New York Railroad Co.

pany became insolvent; insolvent proceedings against the same were thereupon instituted in the Court of Chancery of New Jersey, and a receiver of the property and franchises thereof appointed by said court, under and in pursuance of the act entitled "A supplement to an act to prevent frauds by incorporated companies," approved April 15th, 1846, which supplement was approved March 17th, 1870, (*pro ut* the same, *Pamph. L., p.* 55,) and such proceedings were thereupon had in said court, in pursuance of the last-mentioned act, that afterwards, by the order of said court, a sale of the property and franchises of the said The Newark and Paterson Railroad Company was made to Louis D. Rucker and others, which sale having been confirmed by said court, a deed of conveyance of said property and franchises was executed and delivered by the said receiver to the said purchasers on the 2d day of November, 1871.

The said Rucker and others, purchasers of said property and franchises, within six months after said sale, and on the 16th day of January, 1872, and by virtue and in pursuance of the last-mentioned act, accepted the charter of the said The Paterson and Newark Railroad Company, whose property and franchises they had purchased, under the corporate name of The Paterson, Newark and New York Railroad Company, and made a certificate to that effect, bearing date the day and year last aforesaid, and filed the same, pursuant to the last-mentioned act, on the 19th day of January, 1872, and thereupon became a corporation by the name of "The Paterson, Newark and New York Railroad Company," which now holds the property and franchises, subject to the said lease to the Erie Railway Company.

The Erie Railway Company became insolvent in 1875, a receiver of its property and franchises was duly appointed, a mortgage on its said property and franchises was foreclosed, and a sale thereof afterwards had and made, and the purchasers of the said property and franchises, including said lease, formed and organized a new corporation under the charter of the said The Erie Railway Company, in pursuance of the

statutes in such case made and provided, by the name of "The New York, Lake Erie and Western Railroad Company."

The said certificates of organization of the said companies so as aforesaid organized, are to be considered in evidence, and may be referred to, if necessary, on the argument of the rule to show cause.

It is admitted that no demand was made by said cemetery company for the erection of said wall, nor any proceedings taken to enforce said bond until the year 1878, or thereabouts. Nor before that time was any notice given to the Erie Railway Company, its receiver, or to either the Paterson, Newark and New York Railroad Company, or the New York, Lake Erie and Western Railroad Company, of the existence or non-fulfilment of the said bond or of the agreement to build said wall, which has never been built.

It is further admitted that no proof exists of the designation of any line of said proposed wall being ever made by said cemetery company.

Argued at June Term, 1881, before Justices DEPUE and VAN SYCKEL.

For the relator, *John W. Taylor.*

For the respondents, *C. Parker.*

The opinion of the court was delivered by

DEPUE, J. The relator is the owner of a plot of ground used for cemetery purposes, lying upon the banks of and adjacent to the Passaic river, a tidal stream.

The Paterson and Newark Railroad Company was incorporated by a special act of incorporation, passed February 22d, 1866. *Pamph. L., p.* 86. The company was authorized to construct its railroad along the Passaic river, from Belleville to Newark, and to acquire the rights of the shore-owners by purchase or condemnation. In constructing its railroad between Belleville and Newark, the track was laid in front of

the cemetery grounds below high-water mark. The legal effect of this part of the company's charter was adjudged by the Court of Errors in *Stevens* v. *Paterson and Newark R. R. Co.*, 5 *Vroom* 532.

The road was built in 1866 and 1867. Financial embarrassments and insolvency having intervened in 1870, the property and franchises of the company, on the 2d of November, 1871, were sold to purchasers who effected a re-organization of the company under the name of The Paterson, Newark and New York Railroad Company, pursuant to the act of March 17th, 1870. *Pamph. L., p.* 55.

On the 8th of September, 1868, and before the sale under the insolvent proceedings, the railroad and franchises of the company were leased and demised to the Erie Railroad Company. The sale in 1871 was made subject to this lease.

In 1875, the Erie Railroad Company in turn, became insolvent, and its property and franchises were sold to purchasers, who re-organized under the name of The New York, Lake Erie and Western Railroad Company.

The charter of the Paterson and Newark Railroad Company, in the section granting the powers above mentioned, contained this proviso:

" Provided, that, in passing by the lands of the Mount Pleasant Cemetery, the said railroad shall not encroach upon the lands thereof which are used for burial purposes in said cemetery; but the said railroad shall be constructed entirely outside, and to the east, of the present stone wall embankment of the cemetery grounds, and near the line of high water in said Passaic river; and before entering upon the said lands, the said railroad company shall enter into an agreement with the Mount Pleasant Cemetery Company to construct a suitable stone wall, not less than six feet high, on the line between said railroad and the cemetery grounds."

The relator applies for a writ of *mandamus*, to be directed to the Paterson, Newark and New York Railroad Company— the successor of the Paterson and Newark Railroad Company— and to the New York, Lake Erie and Western Railroad Com-

pany—the successor of the Erie Railroad Company—commanding them or one of them to build or construct a suitable stone wall, not less than six feet high, on the line between the railroad and the cemetery grounds of the relator.

A writ of *mandamus* will lie at the instance of a private individual against a corporation, to compel performance of a duty enjoined by its charter to be executed for the benefit of the relator or the class of individuals to whom he belongs. The allowance of this writ to compel a company to treat for the purchase of lands—to issue a warrant for a jury to assess damages—to build bridges, to provide water-ways and the like—are instances of such a use of the writ. *Reock* v. *Mayor, &c., of Newark*, 4 Vroom 129; *Rex* v. *Prop. of Nottingham Water Works*, 6 A. & E. 355; *Reg.* v. *Birmingham C. Co.*, 4 Jur. 173; *Reg.* v. *E. C. R. R. Co.*, 5 Id. 365; *Reg.* v. *N. M. R. R. Co.*, 2 Railw. Cas. 1; *Reg.* v. *N. & B. R. R. Co.*, 4 Railw. Cas. 112; *Reg.* v. *Y. & N. M. R. R. Co.*, 3 Id. 764; *Reg.* v. *M. & L. R. R. Co.*, 1 Id. 523. But the allowance of the writ in such cases must be controlled by the fundamental principle that it is the absence of an adequate legal remedy that gives the court jurisdiction to proceed by *mandamus*. Two things must concur to authorize the issuing of a *mandamus*—a specific legal right, and the absence of an effectual legal remedy. 2 Dill. on Mun. Corp., §§ 665, 686; *State* v. *Holliday*, 3 Halst. 205; *State, ex rel. Nicholson Pav't Co.*, v. *Newark*, 6 Vroom 396; *State, ex rel. Little*, v. *Township of Union*, 8 Id. 84; *Queen* v. *Hull and Selby R. R. Co.*, 6 Q. B. 70; *Moses on Mandamus* 176, 178; 2 Redf. on Railways 279, 286.

The specific legal duty enjoined upon the Paterson and Newark Railroad Company by its charter, with respect to the relator's lands, was that it should construct its railroad entirely outside and to the east of an existing stone wall embankment, and near the line of high-water mark in the river, and that, before entering upon the said lands, the railroad company should enter into an agreement with the cemetery company to construct a suitable stone wall, not less than

six feet high, on the line between the railroad and the cemetery grounds.

The railroad company located its road outside of the line indicated, and, before it commenced the construction thereof, entered into a bond to the relator, bearing date on the 17th of August, 1866, in the penal sum of $30,000, in which, after reciting the above provisions of its charter, the railroad company did agree to construct, within three years, a suitable stone wall, not less than six feet high, on the line between its railroad and the cemetery grounds, with condition, that if the said company should well and truly construct, within three years from the date of said bond, a suitable stone wall, not less than six feet high above the surface of the ground, with a proper foundation laid in cement to the water line, and that part above said line to be laid in good lime and sand mortar, the line of said wall to be designated by said cemetery company, then the said obligation was to be void, else to remain in full force. It is to be inferred from the state of the case and the briefs of counsel that this bond was delivered to the relator, and that the specifications of the work were mutually agreed on. At least, no point is made that the company neglected or refused to execute and deliver to the relator an agreement in compliance with the charter.

In the act incorporating the railroad company, it was the legislative purpose to secure to the relator a satisfactory location of the railroad, and an agreement for the erection of a wall, to be enforced in the usual method by which contracts can be enforced—by action at law or by bill for specific performance. The specific duty imposed on the company by its charter, in this respect, has been fully performed.

The bond which was executed and delivered complied with the terms of the charter. On it the relator had an adequate remedy, according to the nature of the case, either by action or proceedings for specific performance. The agreement was executed in August, 1866. The road was constructed in 1866 and 1867. The company did not become insolvent until 1870, and its corporate existence was not extinguished until the sale of

its property and franchises in 1871. The relator had adequate legal remedy on its contract. If that remedy has since become inefficacious by reason of delay, the relator cannot have relief by *mandamus*. Duties imposed on a corporation, not by virtue of express law, or by the conditions of its charter, but arising out of contract relations, will not be enforced by *mandamus*. *High on Ex. Rem.*, § 321.

The writ should be refused, and the rule to show cause be discharged.